Exhibit B

1          UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF HAWAII
2

UNITED STATES OF AMERICA,      )    CR No. 03-00221HG
3                              )    CR No. 03-00350HG
            Plaintiff,         )
4                              )    Honolulu, Hawaii
                               )    July 17, 2003
5          v.                  )    4:30 p.m.
                               )
6   MICHAEL FARINAS,           )    COPY
                               )
7           Defendant.         )
   ────────────────────────────)
8

    TRANSCRIPT OF MOTION FOR WITHDRAWAL OF NOT GUILTY PLEA AND TO
9   PLEAD ANEW; WAIVER OF INDICTMENT; ARRAIGNMENT AND PLEA OF GUILTY
            BEFORE THE HONORABLE LESLIE E. KOBAYASHI
10             UNITED STATES MAGISTRATE JUDGE.

11  APPEARANCES:

12  For the Plaintiff:        U.S. ATTORNEY'S OFFICE
                              By:  LOUIS BRACCO, ESQ.
13                            300 Ala Moana Boulevard, #6100
                              Honolulu, Hawaii 96850
14
    For the Defendant:        KING & KING
15                            By:  SAMUEL P. KING, JR., ESQ.
                              735 Bishop Street, #304
16                            Honolulu, Hawaii 96813

17

18  Transcriber:              Jessica B. Cahill
                              P.O. Box 1652
19                            Wailuku, Maui, Hawaii 96793
                              Telephone: (808)244-0776
20

21

22

23  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service
24

25

1          THE CLERK:  This Honorable Court is now in session.

2    Please be seated.  Criminal 03-00221HG, United States of America

3    versus defendant one, Michael Farinas.  This case has been

4    called for motion -- for hearing on a motion for withdrawal of

5    not guilty plea and to plead anew.

6          Also calling criminal 03-00350HG, United States of

7    America versus defendant one, Michael Farinas.  This case is

8    called for the waiver of indictment and the arraignment and plea

9    of guilty to the felony information.

10         MR. BRACCO:  Good afternoon, your Honor, for the

11   Government Lou Bracco, assistant United States attorney.  And

12   also present at counsel table is IRS Agent Leighton Young

13   (phonetic).

14         THE COURT:  All right.  Good afternoon to you both.

15   Mr. King.

16         MR. KING:  Good afternoon, your Honor, Sam King

17   present with the defendant.  We're prepared to proceed as the

18   Clerk indicated, your Honor.

19         THE COURT:  All right.  We're going to proceed on both

20   matters; is that correct?

21         MR. KING:  Yes.

22         THE COURT:  All right.  Mr. Farinas, is it your

23   intention today to plead guilty to some or all of the charges

24   against you in both cases?

25         THE DEFENDANT:  Yes.

1    THE COURT:  And you have a plea agreement in both
2    cases with the Government; is that correct?
3    THE DEFENDANT:  Yeah.
4    THE COURT:  Before the Court can accept your guilty
5    plea I must know that you understand what you are doing, that
6    you are pleading guilty freely and voluntarily --
7    THE DEFENDANT:  Yes.
8    THE COURT:  -- that there is a factual basis for your
9    change of plea, and that your plea of guilty -- and that the
10    ends of just would be met by permitting you to change your plea
11    to guilty.
12    To make sure that you understand I will ask you
13    questions, and if at any time you do not hear or understand the
14    questions I ask of you please say so.  Do you understand that?
15    THE DEFENDANT:  Yeah.
16    THE COURT:  Mr. Nakamura, if you would please
17    administer the oath to the defendant.
18    MICHAEL FARINAS
19    Was called by the Court and after having been first duly sworn
20    was examined and testified as follows:
21    THE COURT:  What is your full name?
22    THE DEFENDANT:  Michael Ankalia (phonetic) Farinas.
23    THE COURT:  How old are you?
24    THE DEFENDANT:  26.
25    THE COURT:  How far did you go in school?

1             THE DEFENDANT:  Um, 11th.

2             THE COURT:  All right.  Are you able to read and

3    write?

4             THE DEFENDANT:  Yes.

5             THE COURT:  And you're able to speak and understand

6    English?

7             THE DEFENDANT:  Yes.

8             THE COURT:  All right.  Have you taken any medication,

9    alcohol or drugs of any kind today?

10            THE DEFENDANT:  No.

11            THE COURT:  Are you feeling well and alert and able to

12   understand what's going on?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Have you been treated recently for any

15   mental illness or addiction to narcotic drugs of any kind?

16            THE DEFENDANT:  No.

17            THE COURT:  Mr. King, to the best of your knowledge,

18   is your client fully competent and capable of entering a valid

19   plea here today?

20            MR. KING:  Yes.

21            THE COURT:  The Court finds that the defendant is

22   fully competent and capable of entering an informed plea.  Now,

23   Mr. Farinas, if you choose to enter to a guilty plea in this

24   case you do have the right to enter that guilty plea before a

25   United States District Judge, but if you consent, however, you

1   may enter your guilty plea before me as a United States

2   Magistrate Judge.

3           If you plead guilty today to the charges against you

4   Judge Gillmor will impose sentence at a later hearing date.  Do

5   you understand that?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Do you wish to consent to enter your pleas

8   before me a United States Magistrate Judge here today?

9           THE DEFENDANT:  Yes.

10          THE COURT:  All right.  I have before me a consent to

11  Rule 11 plea.  It's file marked July 17, 2003.  Did you have an

12  opportunity to read this agreement and to discuss it with your

13  lawyer before you signed it?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Is that your signature in this matter?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  Counsel, did you discuss the

18  consent form with your client and are you satisfied he fully

19  understands it?

20          MR. KING:  Yes.

21          THE COURT:  And did you also sign it?

22          MR. KING:  Yes.

23          THE COURT:  The Court finds the defendant has

24  consented to enter his plea before a United States Magistrate

25  Judge.  Mr. Farinas, have you received a copy of the -- first,

1   as to the one that you've been indicted on in criminal number

2   03-221-01, did you receive a copy of the indictment in that case

3   that is the written charges against you?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Did you discuss those charges and all the

6   facts surrounding those charges with Mr. King your attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, turning to the matter that has the

9   information have you received a copy of the information pending

10  against you in criminal number 03-350-01?

11         . THE DEFENDANT:  Yes.

12         THE COURT:  Have you discussed those charges and all

13  the facts surrounding those charges with Mr. King your attorney?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Are you fully satisfied with the legal

16  representation that you received from Mr. King as your attorney

17  in this case?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Mr. King, are your client's guilty plea

20  and other actions before the Court today pursuant to your advice

21  and recommendation?

22         MR. KING:  Yes.

23         THE COURT:  Now, in the matter of 03-350-01, the one

24  that has the information, Mr. Farinas, you have a constitutional

25  right to require that a group of citizens called a Grand Jury

1  review the case and determine whether or not the United States

2  presents sufficient evidence to bring charges against you.

3        If the Grand Jury finds the evidence sufficient they

4  return charges in the form of what's called an indictment.  If

5  the Grand Jurors do not find that there is probable cause to

6  believe that you committed the crimes that you have been charged

7  you will not be indicted.

8        If you waive indictment by the Grand Jury then the

9  case will proceed against you on the United States Attorney's

10  information just as if you had been indicted.  Do you understand

11  your right to Grand Jury review?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Do you wish to waive or give up your right

14  to indictment and agree to proceed on the charges as stated in

15  the information?

16        THE DEFENDANT:  Yeah.

17        THE COURT:  Did you read and sign the waiver of

18  indictment form that I have before me the original document

19  that's dated July 17, 2003?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Did you understand by signing this

22  document you're giving up your right to indictment and

23  consenting that is agreeing that the proceeding may be on the

24  U.S. Attorney's information rather than by indictment?

25        THE DEFENDANT:  Yeah.

1          THE COURT:  All right.  And, Mr. King, did you discuss

2    the waiver of indictment with your client and are you fully

3    satisfied he understands it?

4          MR. KING:  Yes.

5          THE COURT:  And you signed it also; is that correct?

6          MR. KING:  Yes.

7          THE COURT:  All right.  The Court finds the defendant

8    has knowingly and voluntarily waived his right to indictment and

9    has therefore signed the waiver of indictment form.

10          All right.  The Court has been furnished with a

11   written plea agreement.  This is the original file marked July

12   17, 2003.  It's a paginated document.  On the last page it's

13   numbered 15 and has Exhibit A, which is the criminal information

14   that was filed against Mr. -- or that -- it's an unfiled form,

15   but it's a criminal information against Mr. Farinas.  The last

16   page is numbered 15, it's dated July 17, 2003, and among the

17   signatures it has that of Mr. Farinas and Mr. King.  Now, is

18   that your signature on the last page, Mr. Farinas?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Did you have an opportunity to read this

21   agreement and discuss it with Mr. King before you signed it?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand the terms of the plea

24   agreement?

25          THE DEFENDANT:  Yes.

1        THE COURT:  Is this the entire and only agreement that

2   you have with the Government?

3        THE DEFENDANT:  Yeah.

4        THE COURT:  Has anyone made any other or different

5   promises of any kind to you, or assurance in order to get you to

6   plead guilty?

7        THE DEFENDANT:  No.

8        THE COURT:  Has anyone attempted to threaten you, or

9   pressure you in any way to force you to plead guilty?

10        THE DEFENDANT:  No.

11        THE COURT:  At this time, Mr. Bracco, if you would

12   please summarize the major terms of the plea agreement including

13   the charges covered and covering with specificity any waiver of

14   appeal provisions?

15        MR. BRACCO:  Yes, your Honor.  In paragraph 1 through

16   4 of the plea agreement, the defendant acknowledges that he

17   understands the charges in the indictment as well as the charges

18   in the information that was filed against him.  The defendant

19   agrees to waive indictment as to the information, and he also

20   consents to enter a voluntary plea of guilty to the indictment

21   as well as the information.

22        In paragraphs 5 and 6, the defendant acknowledges that

23   he understands that the plea agreement, which the Court is

24   reviewing today, if accepted will be filed and be a public

25   record, and that he is pleading guilty because he is, in fact,

1  guilty of the offenses charged in the indictment as well as the

2  information.

3          Paragraph 7, contains a recitation of the penalties

4  that apply to both the offenses charged in the indictment and

5  the offense charged in the information to which Mr. Farinas is

6  pleading guilty.

7          Paragraph number 8, contains a factual basis for the

8  plea.  And I might point -- point out, your Honor, with respect

9  to paragraph number 8, the draft -- we added a few words to the

10  -- in the final form and the words that were added are admit

11  paragraph 8A where it says 50 grams -- we put 50 grams of actual

12  methamphetamine just to make clear that the ten year mandatory

13  minimum does apply.  And that's the only change.  It's the final

14  copy from the draft copy that you have.

15          Paragraphs 9 through 12, apply -- deal with sentencing

16  guidelines.  In those paragraphs, the defendant acknowledges

17  that he understands that the sentencing guidelines will apply to

18  his case, and he acknowledges certain provisions of the

19  sentencing guidelines.

20          Paragraphs 13 to 14, deal with waiver of trial rights,

21  and then basically the recitation of the rights to trial that

22  the defendant has and that he's waiving those rights by pleading

23  guilty here today.

24          Paragraph 15, indicates that the awareness by the

25  defendant that the sentencing judge is not bound by the lawyers'

1    stipulation.

2          Paragraph 16, is acknowledgement that the defendant

3    understands that the U.S. Attorney is going to provide all

4    relevant information about the offenses to which the defendant

5    is pleading guilty to the Probation -- Probation Office, so a

6    presentence report concerning the defendant can be prepared.

7          Paragraph 17, contains the stipulation, and in this

8    case there's a single stipulation and that basically is that the

9    U.S. Attorney stipulates and agrees that the defendant's

10   agreement to plead guilty here today pursuant to the plea

11   agreement is sufficiently timely manner so as to permit the

12   Government to avoid preparing for trial as to the defendant, and

13   that we anticipate by reason of that moving in our sentencing

14   statement, which is filed at the time sentencing for one level

15   sentencing reduction in offense level if the defendant is

16   otherwise eligible for it under 3E1.1(B)(2).

17         Paragraph 18, is the standard appeal waiver in our

18   district.  And basically that waiver provides that the defendant

19   waives his right to appeal from the conviction sentence of this

20   case except in two limited instances.

21         Instance number one, is on direct appeal the defendant

22   maintains his right to appeal his sentence if the sentencing

23   judge upwardly departs from the guideline in imposing sentence.

24         And the second instance where the defendant retains

25   his right to challenge the sentence or conviction is if the

1  defendant can move on collateral attack to challenge the

2  conviction on grounds of ineffective assistance of counsel -- of

3  counsel.

4          Except for those two limited instances the defendant

5  waives all his right to appeal in this plea agreement.

6  Conversely the Government retains its right to appeal in any

7  lawful manner that the Government could appeal.

8          Paragraphs 19 to 21, are the standard cooperation

9  agreement.  Basically that -- those paragraphs indicate that the

10 defendant has agreed to cooperate with Federal law enforcement

11 agents in an ongoing investigation about the offense to which

12 he's -- offenses to which he's pleading guilty as well as other

13 information to his knowledge, and he agrees to testify as

14 required.

15         The -- the -- those paragraphs also indicate that

16 although he may receive a lower sentence, or the Government may

17 move for a substantial assistance departure by reason of his

18 cooperation that the United States Attorney's Office is not

19 making any promise that it will file a substantial assistance

20 motion or ask for a lower sentence.

21         And also, perhaps more significantly, even if the

22 United States Attorney does move the sentencing judge for a

23 lower sentence based on the defendant's cooperation the

24 paragraphs indicate that even if we make that motion there's no

25 promise the judge will grant the motion.

1          And the final paragraph is paragraph number 22, which

2     is an incorporation paragraph, which basically states that no

3     promises have been made to the defendant outside the promises in

4     the written plea agreement to induce him to plead guilty today.

5          THE COURT:  All right.  Thank you.  What has just been

6     explained, Mr. Farinas, is that what you understand to be your

7     agreement with the Government?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand the charges covered by

10    the plea agreement?

11         THE DEFENDANT:  Yes.

12         THE COURT:  You're going to plead guilty to the charge

13    against you in the indictment dated May 17 -- or filed May 17,

14    2003, that charges you with the conspiracy to distribute and to

15    possess with the intent to distribute in excess of 50 grams of

16    methamphetamine, its salts, isomers and salts of its isomers,

17    and to the charge against you of money laundering in the

18    criminal information; is that correct?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand that you're giving up

21    all of your rights to appeal any sentence and to collaterally

22    attack any sentence imposed by the Sentencing Judge except in

23    two limited circumstances.  One, in the event that you allege

24    ineffective assistance of counsel against your attorney or, two,

25    in the event that the sentencing judge departs from the

1   guidelines and imposes a sentence that is more severe than

2   what's required by the guidelines.  Do you understand that?

3              THE DEFENDANT:  Yeah.

4              THE COURT:  In all other instances you're giving up

5   your right to appeal your sentence or to collaterally attack

6   that sentence.  Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right.  For the offense charged in the

9   indictment, Mr. Bracco, if you would state what are the possible

10  penalties that Mr. Farinas faces including the maximum period of

11  imprisonment, the man -- mandatory minimum period of

12  imprisonment, the maximum and minimum fines, the maximum period

13  of supervised release, whether there's a mandatory minimum

14  period of supervised release, and what special penalty

15  assessment applies?

16             MR. BRACCO:  Yes, your Honor.  As to the charge in the

17  indictment, which is a drug offense in violation of 21 U.S.

18  Code, Section 846, a period of imprisonment of up to life,

19  there's a mandatory minimum term of imprisonment of ten years,

20  and that would be absent any substantial assistance motion and

21  the Court granting that motion, so the Court consents to the

22  defendant below ten years, a fine of up to $4 million, and a

23  supervised release term of at least five years and up to life.

24  In addition, there's a $100.00 special assessment.

25             THE COURT:  And, Mr. King, do you agree with that

1   summary as to the possible penalties as to the charge against

2   you [sic] in the indictment?

3           MR. KING:  Yes.

4           THE COURT:  With regard to the charge against the

5   offense charged in the criminal information if you would state

6   the possible penalties that Mr. Farinas would face if he pleads

7   guilty including the maximum and mandatory minimum periods of

8   imprisonment, maximum minimum fines, what is the maximum period

9   of supervised re -- supervised release, whether there's a

10  mandatory minimum period of supervised release, and what special

11  penalty assessment would apply?

12          MR. BRACCO:  Yes, your Honor.  As to the criminal

13  information charge, which is a money laundering offense that

14  there's a maximum of up to 20 years imprisonment, there's no

15  mandatory minimum term of imprisonment that applies to that

16  offense.  There is a fine, however, and the fine is the

17  alternative of either up to $500,000.00, or an amount equal to

18  twice the value of the property involved in the money laundering

19  transaction, whichever is greater.

20          So, there's an alternative fine, and whichever is

21  greater could be the maximum possible fine plus there's a

22  supervised release term without a minimum of up to three years.

23  And, again, there's the $100.00 special assessment fee.

24          THE COURT:  And, Mr. King, do you agree with that

25  summary as to the possible penalties?

1       MR. KING:  Yes.

2       THE COURT:  Mr. Farinas, do you understand these are

3  the possible penalties, which would apply if you entered a

4  guilty plea to the charge against you in the indictment and the

5  charge against you in the criminal information?

6       THE DEFENDANT:  Yes.

7       THE COURT:  If you are convicted of more than one

8  offense the Court has the authority to impose consecutive

9  sentences.  If the Court did that you would have to serve those

10  sentences one at a time.  Do you understand that?

11       . THE DEFENDANT:  Yes.

12       THE COURT:  During the period of supervised release

13  you must comply with the set of conditions that will be

14  explained to you by your probation officer.  These conditions

15  include that you obey the law, that you report to the probation

16  officer as required, and other conditions.

17       If the Court finds that you violated any of these

18  conditions you could be ordered to serve additional prison time.

19  Do you understand that?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Are you presently on probation, parole or

22  supervised release from some other case?

23       THE DEFENDANT:  No.

24       THE COURT:  Does the United States contend that any

25  felony offense to which he is today pleading guilty occurred

1    while he was out on bond in relation to some other Federal

2    criminal charge?

3            MR. BRACCO:  No, your Honor, we have no information in

4    that regard.

5            THE COURT:  Are you a citizen of the United States,

6    Mr. Farinas?

7            THE DEFENDANT:  Yes.

8            THE COURT:  If you are convicted of the charges in

9    this case you may lose valuable civil rights including the right

10   to vote, the right to serve on a jury, the right to hold public

11   office, and the right to possess any kind of firearm.  Do you

12   understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  The United States Sentencing Commission

15   has issued guidelines for judges to use in determining sentences

16   in criminal cases.  Have you and Mr. King discussed those

17   guidelines and how they may apply to your case?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you understand the Court will not be

20   able to determine the guideline sentence for your case until

21   after the presentence report has been prepared and until after

22   you and the Government have had an opportunity to read this

23   report and to comment on the contents of that report and the

24   application of the guidelines recommended by the probation

25   officer, and that the sentence imposed may be different from any

1    estimate your attorney may have given you?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you also understand that after your

4    guideline range has been determined the Court has the authority

5    in some circumstances to depart from those guidelines and to

6    impose a sentence that might be more severe or less severe than

7    what's required by the guidelines?

8              THE DEFENDANT:  Yes.

9              THE COURT:  If the sentence is more severe than you

10   expected you will still be bound by your plea.  Even if you do

11   not like.the sentence imposed by the judge you will not be able

12   to take back your guilty plea.  So, the time to make the

13   decision is now.  Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Parole has been abolished.  If you are

16   sentenced to prison you will not be released on parole.  Do you

17   understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  You have a right to plead not guilty to

20   any offense charged against you.  You would then have the right

21   to trial by jury.  During that trial you would have the right to

22   -- of assistance of counsel for your defense, the right to see

23   and hear all witnesses against you, the right to have your

24   attorney cross-examine those witnesses, the right to testify

25   yourself or remain silent and not testify, and the right to have

1    the Court issue subpoenas for any witnesses you wish to call in

2    your defense.

3           At trial you would be presumed to be innocent, and it

4    would be the United State's burden to prove that you are guilty

5    beyond a reasonable doubt.  Before you can be convicted all 12

6    jurors must be convinced that the United States met that burden.

7           If you are convicted after a trial you would have the

8    right to appeal that conviction to a higher court, and if you

9    could not afford to pay the cost of such an appeal the United

10   States would pay that cost for you.  Do you understand that you

11   have this right to trial as well as the other rights I've just

12   described?

13           THE DEFENDANT:  Yes.

14           THE COURT:  But if you plead guilty and the Court

15   accepts that plea there will be no trial, and you'll be waiving

16   or giving up your right to jury trial as well as the other

17   rights I've described.  Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  As long as you plead not guilty you also

20   have the right to remain silent, but if you decide to plead

21   guilty to the charges against you I will ask you what it is that

22   you did that makes you guilty of those offenses, and you must

23   answer truthfully under oath even if your answers establish that

24   you've committed crimes.  Do you understand that?

25           THE DEFENDANT:  Yes.

1    THE COURT:  Mr. Bracco, at this time if you would

2    summarize for the Court and the defendant the essential elements

3    of each of the offenses that the Government would require -- be

4    required to prove if there were a trial in this matter?

5    MR. BRACCO:  Yes, your Honor.  As to the drug offense

6    charged in the indictment we have to prove the following three

7    elements.  First, that there existed an agreement between two or

8    more persons to distribute or possess with intent to distribute

9    methamphetamine as charged in the indictment.

10    The second element would be that sometime during the

11    existence of that conspiracy the defendant willfully

12    participated in it.

13    And the third element, is the so called apprendi

14    element, which would be that the offense that's charged in Count

15    1 involves 50 grams or more of methamphetamine.

16    THE COURT:  All right.

17    MR. BRACCO:  Oh, and as to the second offense, which

18    is charged in the information, which is the money laundering

19    offense there are five elements.  The first element, is that the

20    defendant aided or abetted another person to conduct a financial

21    transaction.

22    The second element, that the transaction in fact

23    involved drug proceeds or the proceeds of specified unlawful

24    activity.  In this case the unlawful activity would be drug

25    trafficking, so it would be drug proceeds.

1          The third element, is that the defendant knew the

2     money was involved in the transaction of the drug proceeds.

3          Element number four, that the transaction was intended

4     to promote the carrying on of drug trafficking activity, and in

5     this case it would be the drug trafficking activity charged in

6     the indictment.

7          And five -- and the last element would be that the

8     transaction affected interstate commerce.

9          THE COURT:  Mr. King, do you disagree in any respect

10    with that summary as to the essential elements?

11          MR. KING:  No, your Honor.

12          THE COURT:  All right.  Mr. Farinas, do you fully

13    understand if there were a trial on these charges the Government

14    would be required to be bring evidence such as witnesses and

15    documents that would be sufficient to prove each of those

16    essential elements beyond a reasonable doubt?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  The plea agreement includes a

19    written summary of facts upon which your pleas are based.  These

20    occur -- or appear at paragraph 8, beginning on page 5 and

21    continuing on to page 6 of the plea agreement.  Mr. Farinas,

22    have you read carefully through that statement of facts?

23          THE DEFENDANT:  Yeah.

24          THE COURT:  And are those facts all true in every

25    respect?

1       THE DEFENDANT:  Yes.

2       THE COURT:  All right.  Tell me what it is that you

3  did that makes you guilty of the charge against you of

4  conspiring and with regard to the drug charge.  Specifically

5  from a time unknown, but by November 1999 and continuing to at

6  least October 22, 2001, in the District of Hawaii and elsewhere

7  that you and Elmer Farinas willfully conspired together with

8  each other and other persons known and unknown to distribute and

9  to possess with intent to distribute in excess of 50 grams of

10  methamphetamine, its salts, isomers, and salts of its isomers.

11  What is it that you did that makes you guilty of that offense?

12       THE DEFENDANT:  I agreed with my brother -- excess of

13  50 grams of methamphetamines.  In July 2000, he received a

14  quantity of methamphetamine in excess of 50 grams in Hawaii from

15  a courier who transported it.

16       THE COURT:  Well -- all right.  So, you -- you

17  conspired with your -- with your brother --

18       THE DEFENDANT:  Yeah.

19       THE COURT:  -- into bringing methamphetamine into

20  Hawaii?

21       THE DEFENDANT:  Yes.

22       THE COURT:  All right.  And what was your intent --

23       THE DEFENDANT:  Distribute.

24       THE COURT:  -- once you got the methamphetamine?

25       THE DEFENDANT:  Distribute.

1        THE COURT:  All right.  Was that to sell it to others?

2        THE DEFENDANT:  Yes.

3        THE COURT:  All right.  And did you know that the drug

4   was methamphetamine, its salts, isomers, and salts of its

5   isomers?

6        THE DEFENDANT:  Yes.

7        THE COURT:  All right.  Did you know that it was in

8   excess of 50 grams of methamphetamine?

9        THE DEFENDANT:  Yes.

10       THE COURT:  All right.  And you brought it into the

11  State of Hawaii; is that correct?

12       THE DEFENDANT:  Yes.

13       THE COURT:  All right.  With regard to the money

14  laundering charge then that's contained in the criminal

15  information what is it that you did that makes you guilty of on

16  or about June 27, 2000, that you and Elmer Farinas did knowingly

17  and willfully aide and abet another person to conduct and in an

18  attempt to conduct a financial transaction affecting interstate

19  commerce, to wit the Western Union wire transfer of $4,000.00 in

20  United States currency from Honolulu, Hawaii to Los Angeles,

21  California, and that these monies, in fact, constituted proceeds

22  of specified unlawful activity, to wit the distribution of

23  controlled substances.  That is the methamphetamine that's

24  described in the indictment, and that you knew that the proceeds

25  involved were -- or the monies involved in this wiring of the

1   money were proceeds of unlawful drug distribution activity and

2   acted with the intent to promote the drug distribution activity.

3   What is it that you did that makes you guilty of that offense?

4          THE DEFENDANT:  I wired $4,000.00 for drug

5   trafficking.

6          THE COURT:  All right.  So, you caused $4,000.00 to be

7   wired through Western Union; is that correct?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  And did you know that the

10  money -- the $4,000.00 were money that was obtained as a result

11  of selling methamphetamine?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.  And your intent of wiring the

14  money was what?  What was -- what was the purpose of wiring the

15  money to Los Angeles?

16         THE DEFENDANT:  Drugs.

17         THE COURT:  All right.  To purchase more illegal

18  drugs; is that correct?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And that was part of the conspiracy that

21  you had with Elmer Farinas and others to bring methamphetamine

22  into the State of Hawaii?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And to sell it to others?

25         THE DEFENDANT:  Yes.

1    THE COURT:  And you -- knowing that it was an illegal
2    drug?

3    THE DEFENDANT:  Yes.

4    THE COURT:  All right.  Anything further with regard
5    to the elements?

6    MR. BRACCO:  No, your Honor.

7    THE COURT:  All right.  The Court finds that there is
8    an independent basis in fact constituting each of the essential
9    elements of the crimes charged against Mr. Farinas.

10    Mr. Farinas, if you plead guilty the Court will order
11    that a presentence report be prepared.  This is the report about
12    you and your case.  The sentencing judge will rely in part on
13    the contents of that presentence report in determining whether
14    or not to accept your plea agreement.

15    If the sentencing judge decides to reject your plea
16    agreement you will have an opportunity to take back your guilty
17    plea to each of these charges and to plead not guilty.  Do you
18    understand that?

19    THE DEFENDANT:  Yes.

20    THE COURT:  I'm going to ask you now how do you plead
21    to the charge against you in the indictment of May 7, 2003,
22    charging you with the conspiracy charge of conspiring with Elmer
23    Farinas and others to distribute and to possess with the intent
24    to distribute in excess of 50 grams of methamphetamine, its
25    salts, isomers and salts of its isomers in violation of Title 21

1  U.S.C, Section 841(A)(1).  How do you plead guilty or not

2  guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  How do you now plead to the charge against

5  you in the criminal information charging you with on or about

6  June 27, 2000, in the District of Hawaii and elsewhere that you

7  and Elmer Farinas did knowingly and willfully aid and abet

8  another person to conduct and attempt to conduct a financial

9  transaction affecting interstate commerce, to wit the Western

10  Union wire transfer of $4,000.00 in United States currency from

11  Honolulu, Hawaii to Los Angeles, California.  Said monies, in

12  fact, constituting proceeds of unspecified lawful activity to

13  wit the distribution of controlled substances as described in

14  the indictment criminal number 03-221.

15          In aiding and abetting such financial transactions

16  defendants knew -- each knew that the monies involved in the

17  financial transaction of proceeds of unlawful drug distribution

18  activity and acted with the intent to promote the carrying on of

19  such specified unlawful activity all in violation of Title 18

20  U.S.C. Code -- U.S.C., Section 1956(A)(1)(A) sub i and 2.  How

21  do you know plead to that charge guilty or not guilty?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  Mr. King, are you aware of any reason why

24  the Court should not accept your client's pleas of guilty?

25          MR. KING:  No.

 1          THE COURT:  The Court finds the defendant is fully

 2    competent and capable of entering an informed plea, that his

 3    pleas of guilty are knowing and voluntary and supported by an

 4    independent basis in fact containing each of the essential

 5    elements of the charges against him.

 6          I am therefore signing the report and recommendation

 7    concerning plea of guilty as to each of these charges, and I am

 8    recommending that the defendant be adjudged guilty and have

 9    sentence imposed subject to the Court's consideration of the

10    plea agreement.  Objections to both reports and recommendations

11    are waived unless filed and served within ten days of today's

12    date.

13          Mr. Farinas, I am having our probation prepare the

14    presentence report.  That's the report about you and your case.

15    The probation officer will need to interview you.  If you wish

16    Mr. King can be present during that interview.  Once the report

17    is completed you'll have an opportunity to read it and to file

18    any comments to the reported facts and other information

19    contained in the report.

20          At the time of your sentencing hearing you and your

21    attorney will have an opportunity, if you wish, to make a

22    statement before the sentencing judge imposes sentence.  Mr.

23    Nakamura, if you would set the sentencing date and time.

24          THE CLERK:  Sentencing as to Count 1 of the -- Count 1

25    of the indictment in criminal 03-00221HG and sentencing to the

1  felony information in criminal 03-00350HG will be on December

2  29, 2003, at 1:30 p.m., before Judge Helen Gillmor.

3          THE COURT:  All right.  Anything further on behalf of

4  the Government, Mr. Bracco?

5          MR. BRACCO:  No, your Honor.

6          THE COURT:  Anything further on behalf of your client,

7  Mr. King?

8          MR. KING:  No, your Honor.

9          THE COURT:  All right.  The defendant shall remain in

10  custody pending sentencing pursuant to the prior detention

11  order.  If nothing further then we're adjourned.  Good day.

12          THE CLERK:  All rise.  This Honorable Court stands

13  adjourned.

14          (At which time the above-entitled proceedings were

15  concluded.)

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated this 28th day of September, 2005.

_____

Jessica B. Cahill